IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MIDCON DATA SERVICES, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 20-cv-674-PRW |
| | ) |
| OVINTIV USA INC. f/k/a | ) |
| ENCANA OIL & GAS (USA), INC.; | ) |
| OVINTIV MID-CONTINENT INC. f/k/a | ) |
| NEWFIELD EXPLORATION | ) |
| MID-CONTINENT INC. | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S TRIAL BRIEF**

Plaintiff ("Midcon") submits its Trial Brief. Leave to provide supplemental briefing on any issue or matter which arises during the course of trial is requested following the close of evidence.

**I.   DEFENDANT HAVING MIDCON'S DATA FOR EVEN ONE DAY AFTER THE ENCANA/NEWFIELD MERGER WAS WRONG.**

*M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753 (10th Cir. 2009) is a remarkably on-point case to both the breach of contract and trade secret misappropriation tort claims in this matter. Kerr McGee obtained constructive possession of a library of seismic data previously licensed to Oryx, the target of a merger transaction. Kerr McGree argued that its "reverse triangular merger" did not constitute a change of control triggering license termination or relicensing obligations. This was absolutely rejected. The jury found, and the 10th Circuit affirmed, that the merger transaction by which Kerr McGee acquired Oryx had triggered a prior consent requirement in the plaintiff's license

1

agreements with Oryx, which had been ignored, thereby breaching them. Encana's merger with Newfield was the same type of merger. Newfield and Encana did the same thing that Kerr McGee and Oryx did by ignoring the terms of the license agreements and closing their merger, thereby constructively transferring data in violation of the non-disclosure terms of the licenses. It is notable that one of the jury instructions validated in *M.D. Mark* concerning misappropriation of trade secrets enabled the jury to find liability if Kerr McGee <u>either</u> wrongfully obtained copies of the data <u>or</u> used it without a license. As the Court has already observed, the current statutory language of Oklahoma's Trade Secrets Act does not make "use" an element of proof necessary for a misappropriation tort to be established.

Ovintiv has argued that it should be excused from the simple, plainly understandable and unambiguous terms of the Midcon-Newfield license agreements because, it claims, it should have been allowed a "reasonable time" to purge itself of putatively unwanted data after the merger was completed. There is no statutory or caselaw authority for this proposition.

**II.   THE COURT SHOULD DRAW INFERENCES IN MIDCON'S FAVOR CONCERNING THE SUBSTANTIAL EVIDENCE OVINTIV SIMPLY WITHHELD DURING DISCOVERY.**

The Court's standing rules and orders require that litigants disclose their evidentiary materials, with the consequence of not doing being that "surprise" evidence will not be allowed during trial. In addition to steadfastly resisting document production requests seeking information about the due diligence process between Newfield and Encana leading to the February 13, 2019 closing of their merger, <u>at least</u> as it related to seismic data

2

licenses, Ovintiv failed to present a witness willing or able to answer most of the topics that this Court <u>ordered</u> were proper areas of inquiry.

One of Ovintiv's defensive arguments in this case is that it made its decision to drill the Mary J wells using "only" 3D seismic data for which it had separately obtained a license. However, Ovintiv never produced any business record of any seismic license purchases whatsoever. Specifically, Ovintiv produced no record of ever having rights to the East Knox 3D survey – which its geophysicist (formerly Newfield's employee) claims was the exclusive seismic data source Ovintiv used in deciding where to drill in the "SCOOP" area in Stephens County. Evidence produced only days before the discovery cutoff, after Ms. Doss's deposition, shows that Doss made a presentation of seismic data analysis, apparently to pinpoint where the Mary J wells should be drilled. But the actual work product was redacted completely. An ancient blackletter legal principal, commonly referred to as the *negative inference from nonproduction*, instructs that "[t]he nonproduction of evidence that would naturally have been produced by an honest and therefore fearless claimant permits the inference that its tenor is unfavorable to the party's claim. *Rhea v. Territory*, 1909 OK CR 153, 105 P. 314, 319 (*Armory v. Delamirie*, 1 Strange, 505 (Eng. 1722)). If it were true that the data incorporated into the analysis software used by Doss or others affirmatively never included Midcon's data, and given that a strong confidentiality protective order was entered in this case, Ovintiv had no rational excuse to not produce the unredacted work product, records showing licensing of the East Knox 3D survey, and other work papers generated in the prospect development process, to corroborate the conclusory assertions of Ms. Doss. The same principal will also apply to

3

many of the topics covered in this Court's discovery order concerning the Rule 30(b)(6) deposition for which Ms. Doss, the sole representative Ovintiv provided, readily admitted complete ignorance and a failure to even attempt to gather responsive information.

### III. JUDICIAL NOTICE IS APPROPRIATE AND REQUESTED FOR PUBLIC RECORDS THAT SUPPLY INFORMATION OVINTIV REFUSED TO SHARE DURING DISCOVERY.

Readily accessible public records, such as recorded title instruments and public reports required by law which contain the statements made by their filers, are subject to judicial notice as adjudicative facts at any time when such notice is requested and the material to be noticed is provided to the Court. Okla. Stat. tit. 12 §2022.

A tranche of land records showing Newfield's acquisitions of mineral leases and surface rights in the area where Ovintiv later drilled the Mary J wells was added to Midcon's specific exhibit list after Ovintiv, the afternoon before Ms. Doss was deposed, produced additional materials including previously un-readable source files of spreadsheets used by Encana/Ovintiv to manage the seismic data library it acquired in the Newfield merger. Once a readable copy of that file was available, the timing of exactly when Newfield began acquiring mineral leases compared to when Newfield first had access to 3D seismic instead of only Midcon's 2D seismic became important. Copies of the public land records were acquired and actually delivered, pre-labelled for trial use, at the Doss deposition the next day.

Insofar as Ovintiv never produced any meaningful discovery answers or documents concerning its profits either generally or specifically concerning the Mary J wells that appear to have been drilled based on a drilling prospect developed over a course of several

years in reliance on Midcon's Data, Midcon likewise has consulted readily available, presumptively reliable public records that will quantify Ovintiv's ill-gotten gains as disgorgement damages upon the misappropriation claim.

IV. **THOUGH NOT REQUIRED BY THE ELEMENTS OF THE MISAPPROPRIATION OF TRADE SECRETS TORT CLAIM, THE EVIDENCE THAT OVINTIV NOT ONLY HAD, BUT ALSO <u>USED OR BENEFITED FROM</u> MIDCON'S DATA MAKES OVINTIV'S PROFITS A BASIS FOR DAMAGES.**

Authorities have been amply cited in the Final Pretrial Report for awarding damages to Midcon based on the greater of either Ovintiv's profits from use of the improperly retained/acquired Data or a reasonable royalty/license fee for its mere possession after the merger closed, regardless of whether it was actually used.

Authorities cited in the Final Pretrial Report also provide that once liability is established and the fact of profits by Ovintiv is shown, the burden of proof to limit the profits attributable to the misappropriation shifts to Ovintiv. Because Ovintiv refused to produce any such evidence, see, *supra*, Prop. II & III.

V. ***CONTRA PROFERENTEM* IS INAPPLICABLE WHERE PARTIES OF EQUIVALENT BARGAINING POWER SIGN AN UNAMBIGOUS WRITTEN AGREEMENT.**

The Licenses were generally executed with uniform terms that Midcon provided, but there are no material ambiguities in those terms. Further, whether it sought to revise the terms or not, Newfield was a multi-billion dollar oil and gas exploration company that, at times, had relied on Midcon to broker licenses of seismic data that Newfield owned. It had had equal bargaining power to have negotiated the contract terms, or even to have used a form of contract of its preference. Thus, the "last resort" rule of contract interpretation

by which ambiguities should be construed against the drafter of an adhesion or similar form contract is inapplicable in this case.  *See, e.g., Stegall v. Little Johnson Assocs., Ltd.*, 996 F.2d 1043, 1049 (10th Cir. 1993); *Higby Crane Serv., LLC v. Nat'l Helium, LLC*, 751 F.3d 1157, 1166 (10th Cir. 2014); *Payless Shoesource, Inc. v. Travelers Companies, Inc.*, 585 F.3d 1366, 1373 (10th Cir. 2009).

## VI.   THE COURT SHOULD RECONSIDER ITS LIMITATION OF MIDCON'S ALTERNATIVE CLAIM FOR DESTRUCTION OF BAILMENT.

Midcon presented suitable authorities to find that the measure of damages for destruction of media that Ovintiv admitted Newfield had destroyed, containing the originally-delivered iterations of some of Midcon's Data, should be the commercial value of the Data, not merely the replacement cost of the USB hard disk drives it was carried on. While Midcon will not be contending at trial that any of its Data was irretrievably lost, the point of the obligation to return "all copies" and to provide verifiable evidence that no versions or derivatives of the Data have been kept is itself a valuable right, as a part of Midcon's efforts to continually maintain the ongoing confidentiality of its proprietary data. As discussed in the *M.D. Mark* case, large oil and gas exploration companies have been found, in the past, to accumulate large troves of "bootleg" seismic data.  Insisting on return of all original physically delivered media is a critical element of preventing data piracy. Evidence will be presented that in at least one instance, another company who completed a merger with a Midcon seismic data licensee, but who acknowledged that neither the acquired company nor the acquiring company could locate all originally-delivered media,

and who thus acknowledged that they could not assure Midcon that all copies of Midcon's data had been purged, agreed to pay reasonable relicensing fees for un-accounted for data.

RUBENSTEIN & PITTS, P.L.L.C.

s/*Leif E. Swedlow*
Leif E. Swedlow, OBA #17710
Terry Stokes, OBA #11177
Stephanie Coulter, OBA #33867
1503 E. 19th Street
Edmond, Oklahoma 73013
Telephone: (405) 340-1900
Fax: (405) 340-1001
lswedlow@oklawpartners.com
tstokes@oklawpartners.com
scoulter@oklawpartners.com
ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

This certifies that on January 26, 2023, I electronically filed the attached document with the Clerk of the Court using the CM/ECF system for electronic filing. A Notice of Electronic Filing will be automatically transmitted to the following CM/ECF registrants currently on file.

Timothy J. Bomhoff, tim.bomhoff@mcafeetaft.com
Jodi C. Cole, jodi.cole@mcafeetaft.com
Jennifer B. Puckett, jennifer.puckett@mcafeetaft.com
David C. Holman, David.Holman@dgslaw.com

s/*Leif E. Swedlow*
Leif E. Swedlow