IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MIDCON DATA SERVICES, LLC, | ) |
| Plaintiff, | ) |
| v. | ) |
| OVINTIV USA, INC. f/k/a ENCANA OIL & GAS (USA), INC.; OVINTIV MID-CONTINENT INC. f/k/a/ NEWFIELD EXPLORATION MID-CONTINENT, INC., | ) Case No. CIV-20-00674-PRW |
| Defendants. | ) |

## ORDER

Before the Court is Defendant Ovintiv USA Inc.'s Motion for Summary Judgment (Dkt. 57), seeking summary judgment against Plaintiff Midcon Data Services, LLC, on all its claims. Midcon responded (Dkt. 60), Ovintiv USA replied (Dkt. 67), and the Court held a motion hearing on January 4, 2023. For the reasons given below, the motion is **GRANTED** in part and **DENIED** in part.

### *Background*

In 2002, Midcon entered into a series of data-license agreements with then-Newfield Exploration Midcontinent, Inc. Pursuant to these agreements, Newfield leased proprietary seismic data from Midcon. When Midcon delivered the seismic data into Newfield's possession, the data was stored on various digital information-storage devices such as hard disc drives and persistent-flash-memory storage. Midcon refers to these storage devices as

1

the "Original Media." In February 2019, Neapolitan Merger Corporation, an indirect and wholly owned subsidiary of Encana Corporation, merged with and into Newfield Exploration Company, with Newfield Exploration Company surviving the merger as an indirect, wholly owned subsidiary of Encana Corporation. The parties agree that the license agreements terminated at the time of the February 2019 merger.[1]

When Midcon learned of the merger, it demanded the return of all copies of the seismic data. Although Newfield claimed to have returned all copies of the seismic data, Midcon contends that not all the data was returned and that Newfield retained unlicensed and unauthorized copies of the data. Midcon sued Defendants in state court for breach of contract, misappropriation of trade secrets, and destruction of bailment, demanding that Ovintiv USA, as successor by merger to Defendant Ovintiv Mid-Continent Inc., f/k/a Newfield,[2] pay a relicensing fee for the seismic data allegedly retained after the February 2019 merger.

Defendants removed the case to this Court, Midcon filed an amended complaint, and Defendants filed a motion seeking (1) dismissal of both the breach-of-contract and misappropriation-of-trade-secrets claims as to Ovintiv USA and (2) dismissal of the destruction-of-bailment claim as to Ovintiv USA and Ovintiv Mid-Continent. After Ovintiv Mid-Continent merged with and into Ovintiv USA—leaving Ovintiv USA as the

---

[1] Def.'s Mot. (Dkt. 57), at 2.

[2] At the time of the alleged breach and misappropriation, Newfield and Encana Oil and Gas (USA) Inc. were separate entities. Effective January 24, 2020, Newfield was renamed Ovintiv Mid-Continent Inc., and Encana was renamed to Ovintiv Inc. Effective July 1, 2021, Ovintiv Mid-Continent, Inc. merged with and into Ovintiv USA Inc. *Id.* at 3 n.2, 7.

sole surviving entity—the motion to dismiss was narrowed to the destruction-of-bailment claim. The Court granted in part and denied in part Ovintiv USA's motion to dismiss, concluding that Midcon could pursue its destruction-of-bailment claim as to the Original Media but not as to the intangible seismic data. Ovintiv USA now seeks summary judgment on all Midcon's claims.

## *Legal Standard*

Federal Rule of Civil Procedure 56(a) requires "[t]he court [to] grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In deciding whether summary judgment is proper, the Court does not weigh the evidence and determine the truth of the matter asserted; it instead determines only whether there is a genuine dispute for trial before the factfinder.[3] The movant bears the initial burden of demonstrating the absence of a genuine, material dispute and an entitlement to judgment.[4] A fact is "material" if, under the substantive law, it is essential to the proper disposition of the claim.[5] A dispute is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.[6]

---

[3] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1251 (10th Cir. 2015).

[4] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[5] *Anderson*, 477 U.S. at 248; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[6] *Anderson*, 477 U.S. at 248; *Adler*, 144 F.3d at 670.

If the movant carries its initial burden, the nonmovant must then assert that a material fact is genuinely disputed and must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; by "showing that the materials cited [in the movant's motion] do not establish the absence . . . of a genuine dispute"; or by "showing . . . that an adverse party [i.e., the movant] cannot produce admissible evidence to support the fact."[7]

The nonmovant does not meet its burden by "simply show[ing] there is some metaphysical doubt as to the material facts"[8] or theorizing a plausible scenario in support of its claims. Instead, "the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[9] And as the Supreme Court explained, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment,"[10] since "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine

---

[7] Fed. R. Civ. P. 56(c)(1). *See Celotex Corp.*, 477 U.S. at 322.

[8] *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[9] *Neustrom*, 156 F.3d at 1066 (quoting *Anderson*, 477 U.S. at 251–52); *Bingaman v. Kan. City Power & Light Co.*, 1 F.3d 976, 980 (10th Cir. 1993).

[10] *Liberty Lobby*, 477 U.S. at 247–48.

issue for trial.'"[11] Thus, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."[12] The Court views the evidence and draws all reasonable inferences therefrom in the light most favorable to the nonmoving party.[13]

## *Discussion*

Ovintiv USA seeks summary judgment on Midcon's claims for breach of contract, destruction of bailment, and misappropriation of trade secrets. The Court will address each claim in turn.

I. *Breach-of-Contract Claim*

Under Oklahoma law, which governs here, "the paramount objective of contract interpretation is to ascertain and give effect to the intention of the parties."[14] Courts consider the entire agreement and construe "every provision . . . so as to be consistent with each other," adopting the construction that, "if possible, gives effect to every part of the contract."[15] "If language of a contract is clear and free of ambiguity, the court is to interpret

---

[11] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

[12] *Scott v. Harris*, 550 U.S. 372, 381 (2007).

[13] *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998).

[14] *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1015 (10th Cir. 2018) (citing *Murphy v. Earp*, 382 P.2d 731, 733 (Okla. 1963)).

[15] *Sullivan v. Gray*, 78 P.2d 688, 690 (Okla. 1938); Okla. Stat. tit. 15, § 157 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others.").

it as a matter of law."[16] "If a contract contains apparently contradictory terms, the terms should be reconciled, if possible, by giving the offending clause some effect, 'subordinate to the general intent and purposes of the whole contract.'"[17] But if ordinary contract-interpretation rules fail to resolve ambiguities, any ambiguities in the contract should be interpreted against the drafter.[18] Words or terms not contained in the contract shouldn't be read into it, and courts "may not contort the plain terms of the contract in order to avoid conflict."[19] And "when a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible."[20]

Ovintiv USA argues that each of Midcon's breach-of-contract theories fails. According to Ovintiv USA, those theories include Newfield's (1) failure to return the Original Media; (2) post-merger retention of the seismic data; (3) removal of the seismic data from the Original Media; and (4) deletion of electronic copies of the seismic data from its geology software. Ovintiv USA also argues that Midcon suffered no damages because

---

[16] *Lewis v. Sac & Fox Tribe of Okla. Hous. Auth.*, 896 P.2d 503, 514 (Okla. 1994).

[17] *Husky Ventures, Inc.*, 911 F.3d at 1015 (quoting Okla. Stat. tit. 15, § 154).

[18] *Premier Res., Ltd. v. N. Nat. Gas Co.*, 616 F.2d 1171, 1178 (10th Cir. 1980); Okla. Stat. tit. 15, § 170.

[19] *Husky Ventures, Inc.*, 911 F.3d at 1015 (citing *Dismuke v. Cseh*, 830 P.2d 188, 190 (Okla. 1992) and Okla. Stat. tit. 15, § 168).

[20] Okla. Stat. tit. 15, § 155. *See Mercury Inv. Co. v. F.W. Woolworth Co.*, 706 P.2d 523, 529 (Okla. 1985) (explaining that when a contract is "complete in itself and, as viewed in its entirety, is unambiguous, its language is the only legitimate evidence of what the parties intended" and that "the practical construction of an agreement, as evidenced by the acts and conduct of the parties, is available only in the event of an ambiguity") (emphasis omitted).

Midcon retained the originals of the seismic data and had the ability to license that data to third parties.

Midcon counters, however, that Newfield breached the license agreements when it merged with the Encana subsidiary in February 2019. This is because, under the contracts' terms, Newfield was required to obtain Midcon's prior written consent before the transaction. Midcon continues that Newfield further breached the license agreements by retaining seismic data after the merger, and that a relicensing fee is the proper measure of damages.

During the hearing on Ovintiv USA's motion for summary judgment, Midcon narrowed its breach-of-contract claim to the following two theories (and thus abandoned the additional theories that Ovintiv USA identified in its motion): (1) that Newfield breached the license agreements by failing to obtain Midcon's prior written consent before the February 2019 merger; and (2) that Newfield breached the license agreements by retaining seismic data after the February 2019 merger.

### A. Prior Written Consent

Ovintiv USA is not entitled to summary judgment on Midcon's theory that Newfield breached the licensing agreements by failing to obtain Midcon's prior written consent before the February 2019 merger.

Ovintiv USA contends that "neither the contract nor case law required notice or Midcon's consent prior to the transaction."[21] This is because the license agreements, "[b]y

---

[21] Def.'s Reply (Dkt. 67), at 8.

their plain terms, . . . never forbade Newfield's merger or any kind of transaction, or even required the licensee to give notice or obtain consent before the transaction."[22] According to Ovintiv USA, the license agreements require prior written consent only when "the licensee plans to sell, trade, or assign the Data," and "[n]o sale, trade, or assignment of the Data was ever planned or occurred here."[23]

The problem for Ovintiv USA is that the license agreements broadly define the term "assignment" to include any change in ownership due to merger:

> LICENSEE agrees the DATA and copies thereof shall be for LICENSEE'S internal use only, and shall not be sold, traded, *assigned in whole or in part*, without the prior written consent of LICENSOR. "Assignment" shall include any transfer of assets or *change in ownership* of Licensee, whether *by merger* or otherwise.[24]

This provision is unambiguous. By its plain terms, Newfield was required to obtain Midcon's prior written consent before any change in ownership due to merger. And that is precisely what happened here: As Ovintiv USA states in its motion, Newfield "surviv[ed] the merger as an indirect, wholly-owned subsidiary of Encana Corporation," and "[t]he parties agree that the License Agreements terminated at the time of the merger."[25] This change in ownership triggered the prior-written-consent requirement, a requirement that was not met before the February 2019 merger. This is not, as Ovintiv USA claims, a

---

[22] *Id.* at 8.

[23] *Id.*

[24] Def.'s Mot. (Dkt. 57, Ex. 1), § III (emphasis added).

[25] *Id.* at 2.

"creative reinterpretation";[26] the prior-written-consent provision is instead "clear and free of ambiguity."[27] Ovintiv USA is thus not entitled to summary judgment on this breach-of-contract theory.

### B. Post-Merger Retention of Seismic Data

Nor is Ovintiv USA entitled to summary judgment on Midcon's theory that Newfield breached the license agreements by retaining copies of seismic data after the February 2019 merger.

Ovintiv USA claims that Newfield did not breach the license agreements when it "briefly retained" the seismic data "for a proper purpose"—namely, "auditing the seismic data to return or destroy it."[28] This, says Ovintiv USA, was permissible under the relevant license-agreement provision:

> In the event of Licensee's future corporate reorganization, or in the event of a third party acquisition or merger, the license granted herein shall immediately terminate and all copies of the Data *shall be promptly returned* to Licensor.[29]

Midcon disagrees, arguing that the license agreements required Newfield to return the seismic data *before* the agreements terminated.[30] But Midcon's interpretation is at odds with a plain reading of the provision. The phrase "and . . . shall be promptly returned" follows the phrase "shall immediately terminate." This sentence construction shows that

---

[26] Def.'s Reply (Dkt. 67), at 9.

[27] *See Lewis*, 896 P.2d at 514.

[28] Def.'s Mot. (Dkt. 57), at 20.

[29] *Id.* at Ex. 1, § III (emphasis added).

[30] Pl.'s Resp. (Dkt 60), at 22.

9

Newfield's duty to "promptly return[]" all copies of the seismic data was triggered when the licenses terminated, not before. Even if the provision were ambiguous, however, "the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist":[31] the drafter, Midcon. The license agreements thus gave Newfield a period in which to return the seismic data after the agreements terminated in February 2019.

But whether Newfield "promptly returned" the seismic data is another matter entirely, one that should be resolved by the factfinder and not on summary judgment. Ovintiv USA claims that it "immediately attempted to return [the data],"[32] while Midcon says that Newfield retained copies "for months" after the merger,[33] pointing to emails sent approximately three months after the merger in which an Encana employee notes that copies of seismic data were "in storage [and] due for destruction in a couple of weeks."[34] Because a genuine issue of material fact exists about whether Newfield promptly returned the seismic data to Midcon after the license agreements terminated, Ovintiv USA is not entitled to summary judgment on this breach-of-contract theory.

### C. Damages

Ovintiv USA insists that Midcon nevertheless suffered no damages because "[d]uring the entire terms of the licenses, Midcon retained the originals of the data, and had

---

[31] Okla. Stat. tit. 15, § 170.

[32] Def.'s Reply (Dkt. 67), at 10.

[33] Pl.'s Resp. (Dkt. 60), at 8.

[34] Pl.'s Resp. (Dkt. 60, Ex. 2), at 3.

the ability, and did, license the data to third parties."[35] Therefore, it asserts, "Midcon cannot show it has been damaged by the deletion of any copies of the Seismic Data."[36] But Ovintiv USA cites no authority for this proposition, which is essentially that a licensor suffers no damages when a holder of a non-exclusive license breaches the terms of a license agreement. Ovintiv USA is not to entitled judgment as a matter of law, and a genuine dispute remains concerning any award of damages for Newfield's alleged failure to promptly return the seismic data to Midcon.

In sum, Ovintiv USA is entitled to summary judgment on the breach-of-contract theories that Midcon failed to address in its response and abandoned during the hearing on January 4, 2023: that Newfield breached the license agreements when it allegedly (1) failed to return the Original Media; (2) removed the seismic data from the Original Media; and (3) deleted electronic copies of the seismic data from its geology software. But for the reasons explained above, Ovintiv is not entitled to summary judgment on Midcon's remaining breach-of-contract theories: that Newfield breached the license agreements (1) by failing to obtain Midcon's prior written consent before the February 2019 merger; and (2) by failing to promptly return the seismic data after the February 2019 merger.

II. *Destruction-of-Bailment Claim*

Ovintiv USA is entitled to summary judgment on Midcon's destruction-of-bailment claim. "A voluntary bailment is made by one giving to another, with his consent, the

---

[35] Def.'s Mot. (Dkt. 57), at 22.
[36] *Id.*

possession of personal property to keep for the benefit of the former, or of a third party; the person giving is called the bailor and the person receiving the bailee."[37] Fundamental to the concept of a bailment is the bailor's entitlement to receive the item back "after the trusts of the bailment have been discharged."[38]

Ovintiv USA argues that "Newfield already paid Midcon for the Original Media at the time of each license," pointing to deposition testimony of Midcon's Rule 30(b)(6) witness who admitted that the contracts provided for "the purchase of any physical media devices used to transmit the data" to Newfield.[39] So, because Newfield purchased the Original Media, Ovintiv USA says that no bailment arose in the first place. Midcon, however, failed to respond to this argument or explain its corporate representative's admission. The Court thus considers the destruction-of-bailment claim abandoned, and Ovintiv USA is entitled to summary judgment on this claim.

III.   *Misappropriation-of-Trade-Secrets Claim*

Ovintiv USA is not, however, entitled to summary judgment on Midcon's misappropriation-of-trade-secrets claim.

In Oklahoma, a plaintiff may bring a cause of action for misappropriation of confidential information or trade secrets under the Oklahoma Uniform Trade Secrets Act

---

[37] Okla. Stat. tit. 15, § 442.

[38] *See Broaddus v. Commercial Nat'l Bank of Muskogee*, 237 P. 583, 584 (Okla. 1925) (internal quotation marks and citation omitted).

[39] Def.'s Mot. (Dkt. 57), at 16.

("OUTSA").[40] To prove misappropriation of a trade secret, courts have required plaintiffs to show (1) the existence of a trade secret, (2) misappropriation of the secret by the defendant, and (3) use of the secret to the plaintiff's detriment.[41] The OUTSA defines a "trade secret" as information that

1. derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

2. is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.[42]

"Misappropriation" is, in relevant part, the

*disclosure or use* of a trade secret of another without express or implied consent by a person who . . . at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was . . . derived from or through a person who owned a duty to the person seeking relief to maintain its secrecy or limit its use.[43]

And the OUTSA provides that "[d]amages can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss," and damages may be measured by "a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret."[44]

---

[40] Okla. Stat. tit. 78, §§ 85 *et seq*.

[41] *See Micro Consulting, Inc. v. Zubeldia*, 813 F. Supp. 1514, 1534 (W.D. Okla. 1990); *see also MTG Guarnieri Mfg., Inc. v. Clouatre*, 239 P.3d 202, 209 (Okla. Civ. App. 2010).

[42] Okla. Stat. tit. 78, § 86.4.

[43] *Id.* § 86.2 (emphasis added).

[44] *Id.* § 88(a).

Because the parties do not dispute that the seismic data is a trade secret under the OUTSA, the thrust of Ovintiv USA's argument is that Midcon has no evidence that Newfield disclosed or used the seismic data after the license agreements terminated in February 2019.[45] Ovintiv USA says that Midcon "has admitted that it lacks any evidence that Newfield, Ovinvtiv USA, or Encana disclosed or used Midcon's seismic data," pointing to the deposition testimony of Midcon's Rule 30(b)(6) witness.[46] During that deposition, Midcon's witness stated that he "[did] not have evidence that it was used."[47] This admission, according to Ovintiv USA, is fatal to Midcon's misappropriation claim.

In response, Midcon emphasizes that the OUTSA defines "misappropriation" as "disclosure or use of a trade secret." As to disclosure, Midcon points to exhibits suggesting that "[d]espite its claims to have purged all copies of the Midcon data, Ovintiv retained actual control of various copies of it . . . for months after the closing of the Newfield merger."[48] And as to use, Midcon argues that "[w]ithin a few months after closing its acquisition of Newfield, Ovintiv applied for new drilling permits for a site . . . in close proximity" to lines of Midcon's seismic data that it had previously licensed to Newfield.[49] According to Midcon, Ovintiv USA then drilled "profitable new wells," which "allow[s] the reasonable inference that despite its denials, Ovintiv used Midcon's proprietary data

---

[45] At oral argument, counsel for Ovintiv USA acknowledged that it primarily disputes the "disclosure or use" element of Midcon's misappropriation claim.

[46] Def.'s Mot. (Dkt. 57), at 11.

[47] *Id.* at 12.

[48] Pl.'s Resp. (Dkt. 60), at 12.

[49] *Id.* at 23.

that had been copied or 'reprocessed' into the digitized seismic data collection Ovintiv obtained when it acquired Newfield."[50] This is enough, says Midcon, for "a jury [to] reasonably infer that Ovintiv used Midcon's trade secret seismic data without a license."[51]

But Ovintiv USA replies that Midcon's deposition admission that it has "no evidence" is dispositive, and that Midcon "offers no evidence—such as an expert declaration or anything else—that its seismic data would have any value for [the wells], or to show any other connection with them."[52] What is more, Ovintiv USA argues, "[t]o permit any such inference on a technical matter, Midcon would need admissible testimony from an expert witness."[53] Ovintiv USA also points to a declaration by an Ovintiv geophysicist stating that the company did not use Midcon's seismic data for the wells drilled after the February 2019 merger.[54]

Despite Ovintiv USA's insistence that Midcon has offered no evidence that Ovintiv USA disclosed or used the seismic data after the February 2019 merger, the Court finds that Ovintiv USA has not shown "there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law."[55] The alleged post-merger retention of Midcon's seismic data could support an inference that the data was

---

[50] *Id.* at 13–14.

[51] *Id.* at 23.

[52] Def.'s Reply (Dkt. 67), at 4.

[53] *Id.* at 5.

[54] *Id.* at 6–7.

[55] Fed. R. Civ. P. 56(a).

"disclosed," and Midcon has supported its position by "citing to particular parts of materials in the record."[56] And Midcon's argument that Ovintiv USA drilled new wells near seismic-data lines that had been previously licensed to Newfield is enough to at least raise a genuine dispute for the factfinder. To be sure, Ovintiv USA questions the strength of Midcon's evidence and any inferences the factfinder could draw from it, but at the summary-judgment stage, "the judge's function is not [] to weigh evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[57] The Court concludes, therefore, that Ovintiv USA is not entitled to summary judgment on Midcon's misappropriation-of-trade-secrets claim.

## Conclusion

For the reasons given above, the Court **GRANTS** in part and **DENIES** in part Ovintiv USA's Motion for Summary Judgment (Dkt. 57).

**IT IS SO ORDERED** this 8th day of February 2023.

PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE

---

[56] Fed. R. Civ. P. 56(c)(1). *See Celotex Corp.*, 477 U.S. at 322.

[57] *Birch*, 812 F.3d at 1251 (quoting *Anderson*, 477 U.S. at 249).